23-CR-54
Judge Guzman
Magistrate Judge Cummings

**F I L E D**

FEB 0 1 2023 SMB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB  1 2023

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Violations: Title 18, United States |
| THOMAS V. GIRARDI, | ) | Code, Sections 1343 and 401(3) |
| CHRISTOPHER K. KAMON, and | ) | |
| DAVID R. LIRA | ) | |

## COUNT ONE

The SPECIAL OCTOBER 2022 GRAND JURY charges:

1.    At times material to this indictment:

*Individuals and Entities Involved*

    a.    Defendant THOMAS V. GIRARDI was a lawyer who owned and operated a law firm called Girardi Keese ("GK"). GIRARDI was licensed to practice law in the State of California and was admitted to the general bar of the United States District Court for the Northern District of Illinois.

    b.    Defendant DAVID R. LIRA was a lawyer who worked at GK. LIRA was licensed to practice law in the State of California and was admitted to the general bar of the United States District Court for the Northern District of Illinois.

    c.    Defendant CHRISTOPHER K. KAMON was employed as GK's head of accounting and finance.

    d.    GK Lawyer A was a lawyer who worked at GK.

1

e.     Lender A was a litigation financing firm. GK and GIRARDI owed Lender A approximately $8 million for amounts that Lender A loaned to GK, which GIRARDI had personally guaranteed.

*GK's Bank Accounts*

f.     IOLTA Trust Account: In California, all funds received by a lawyer or law firm for the benefit of a client, including settlement funds, must be deposited into a client trust account at a bank. Such funds can be deposited into a non-segregated trust account known as an "IOLTA" account only if the deposited funds are nominal in amount or are to be held for a short period of time. GIRARDI and LIRA were authorized signatories on an IOLTA account maintained by GK, and LIRA was identified as a "Partner" of GK on that account. KAMON was authorized to initiate wire transfers from GK's IOLTA account, and KAMON had online access to all information regarding that account.

g.     Other Bank Accounts: GK maintained separate checking accounts from which to pay GK's business and operational expenses and its payroll. GIRARDI and KAMON were authorized signatories on those accounts.

*California Rules of Professional Conduct for Lawyers*

h.     Lawyers licensed to practice law in California are required to comply with the California Rules of Professional Conduct ("CRPC").

i.     Under the CRPC, lawyers must: (1) promptly notify their clients when they receive funds in which their clients have an interest; (2) promptly distribute to their clients any undisputed funds that the clients are entitled to receive;

2

and (3) take reasonable remedial measures once they became aware that a person is or was engaged in criminal or fraudulent conduct with respect to a legal proceeding in which the lawyer was involved.

*GK's Representation of Victims of the Lion Air Crash*

        j.      On October 29, 2018, Lion Air Flight 610 crashed in the Java Sea shortly after takeoff from Jakarta, Indonesia. All 189 people on board the aircraft were killed. The aircraft was manufactured by Boeing.

        k.      Victims A through E are relatives of passengers who died in the Lion Air crash.

        l.      GIRARDI, LIRA, and GK Lawyer A, through GK, represented Victims A through E, and certain of their family members, including their minor children (collectively, "the Client Victims"), in lawsuits against Boeing (the "Lion Air cases"). Those lawsuits were filed in Chicago in the United States District Court for the Northern District of Illinois (the "Court"). GK engaged Law Firm A, a law firm based in Chicago, to act as co-counsel in those cases.

        m.      After filing the Lion Air cases, LIRA and GK Lawyer A participated in mediations on behalf of the Client Victims with counsel for Boeing. As a result of those mediations, LIRA and GK Lawyer A recommended to Victims A through D that they and their family members agree to settle their cases with Boeing for an aggregated total of approximately $11,000,000. Victims A through D agreed. Because certain of the Client Victims were minors, those agreements required Court approval.

n. In or about February and March 2020, the Court issued orders approving each of those settlement agreements. Each of those orders required GK to distribute the settlement funds to Victims A through D and their family members from the IOLTA "as soon as practicable" after receiving those funds from Boeing's counsel.

o. In or about April 2020, after an additional mediation involving Victim E's case, LIRA and GK Lawyer A recommended to Victim E that he settle his case with Boeing for approximately $1,550,000. Victim E agreed.

p. After each of the settlement agreements were reached for the Client Victims, the Court entered orders dismissing their respective cases.

q. On or about the dates set forth below, in the approximate amounts indicated, Boeing's counsel wired settlement funds into GK's IOLTA account pursuant to the terms of the settlement agreements with the Client Victims:

| CLIENT VICTIM | DATE | AMOUNT WIRED INTO GK'S IOLTA | AMOUNT DUE TO CLIENT VICTIM |
|---|---|---|---|
| A | March 4, 2020 | $2,105,000 | $1,710,000 |
| B | March 11, 2020 | $2,530,000 | $2,060,000 |
| C | March 27, 2020 | $2,112,500 | $1,725,000 |
| D | March 30, 2020 | $2,530,000 | $2,060,000 |
| E | June 9, 2020 | $1,317,500 | $1,069,500 |

Those wire transfers were net of GK's attorneys' fees. Specifically, under the terms of the settlement agreements for each of the Client Victims, the attorneys' fees to which GK was entitled were separately wired by Boeing's counsel directly to Lender A as partial payments toward GK's and GIRARDI's $8 million loan from Lender A. As a result, GK was not entitled to retain any attorneys' fees from those settlements.

4

Instead, except for attorneys' fees owed to Law Firm A, any costs incurred by GK (up to 1% of the settlement amount), and any advances that GK had made to the Client Victims, all the funds that Boeing's counsel wired into GK's IOLTA were required to be distributed to the Client Victims, as indicated in the above column labeled "Amount Due to Client Victim."

2.      Beginning in or about 2019, and continuing until in or about December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, and others known and unknown to the Grand Jury, knowingly devised, intended to devise, and participated in a scheme to defraud the Client Victims and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.      It was part of the scheme that GIRARDI, KAMON, and LIRA knowingly misappropriated and caused to be misappropriated settlement funds belonging to the Client Victims by diverting those funds or causing those funds to be diverted from GK's IOLTA account for improper purposes. Those improper purposes included, among other things: (1) paying GK's business and operating expenses; (2) funding GK's payroll; (3) paying American Express Card bills; and (4) funding settlements to other GK clients, whose own settlement funds previously had been misappropriated by GK. The defendants accomplished the misappropriation of the Client Victims' funds by, among other things, making false statements and causing false statements

5

to be made to the Client Victims regarding the status of their settlement funds, and concealing and causing those misappropriations to be concealed from the Client Victims, Law Firm A, and the Court.

*Misappropriation of the Client Victims' Settlement Funds*

4.     It was further part of the scheme that KAMON, at GIRARDI's direction and with LIRA's knowledge and assistance, fraudulently misappropriated millions of dollars of the Client Victims' settlement funds from the IOLTA account by preparing checks from that account payable to GK and causing those checks to be deposited into one of GK's business accounts.

5.     It was further part of the scheme that KAMON caused false descriptions to be written in the memorandum section of those checks, including:

   a.     that the misappropriated funds were "fees" owed to GK from the Lion Air cases, when, as the defendants knew, GK was not entitled to retain those funds as fees from those cases; and

   b.     that the misappropriated funds were for "miscellaneous case costs," when, as the defendants knew, those funds did not represent expenses relating to any case.

6.     It was further part of the scheme that KAMON, at GIRARDI's direction and with LIRA's knowledge and assistance, fraudulently used the Client Victims' funds that had been misappropriated to GK's business account to pay GK's business and operating expenses, to fund GK's payroll, and to pay American Express Card bills.

6

7.     It was further part of the scheme that KAMON, at GIRARDI's direction and with LIRA's knowledge and assistance, fraudulently misappropriated additional amounts of the Client Victims' settlement funds from the IOLTA account by preparing checks from that account payable to other clients of GK, whose own settlement funds previously had been misappropriated by GK.

*False Statements about and Concealment of*
*the Misappropriation of the Client Victims' Funds*

8.     It was further part of the scheme that GIRARDI, KAMON, and LIRA fraudulently concealed and caused to be concealed from the Client Victims, Law Firm A, and the Court that GK had received the Client Victims' funds in its IOLTA account and had failed to distribute those funds to the Client Victims as required.

9.     It was further part of the scheme that, in response to repeated inquiries by the Client Victims regarding the status of their funds, GIRARDI, KAMON, and LIRA fraudulently concealed and caused to be concealed from the Client Victims, Law Firm A, and the Court that the Client Victims' funds were being misappropriated.

10.     It was further part of the scheme that GIRARDI, KAMON, and LIRA falsely stated and caused to be stated to the Client Victims that the COVID-19 pandemic prevented and delayed GK from distributing the settlement funds to the Client Victims. In fact, as the defendants knew, GK remained able to process financial transactions into and out of the IOLTA account during the pandemic and the reason the settlement funds could not be promptly distributed to the Client Victims was because those funds were being misappropriated.

7

11.    It was further part of the scheme that, on or about April 6, 2020, in response to an email from Victim B to LIRA and GK Lawyer A requesting a "loan" of $40,000, KAMON, at GIRARDI's direction and with LIRA's and GK Lawyer A's knowledge, wired $40,000 to Victim B as a purported "advance." In fact, as the defendants knew, GK previously had received all of Victim B's settlement funds in its IOLTA account, GK was required to distribute those funds to Victim B without conditions and not as a loan or an advance, and the funds were being misappropriated.

12.    It was further part of the scheme that, on or about May 14, 2020, GIRARDI emailed a letter to Victim B falsely stating:

> We made an agreement with Boeing that all of the cases
> would be resolved. They gave us special authorization to
> distribute 50%.

LIRA and GK Lawyer A received GIRARDI's letter before it was sent to Victim B, and LIRA reviewed and approved that letter. KAMON received that letter shortly after it was sent to Victim B. Each of the defendants knew that there was no agreement with Boeing that prevented GK from distributing the settlement funds to Victim B until "all of the cases" are resolved, that no "special authorization" was required from Boeing to distribute those funds to Victim B, and that the reason the funds had not been distributed to Victim B was because they were being misappropriated.

13.    It was further part of the scheme that, on or about May 14, 2020, GIRARDI emailed a letter to Victim C falsely stating:

8

> I got enough of the problem taken care of so we were able to
> release 50% of the settlement.

LIRA and GK Lawyer A received GIRARDI's letter before it was sent to Victim C, and LIRA reviewed and approved that letter. KAMON received that letter shortly after it was sent to Victim C. Each of the defendants knew that there was no "problem" that prevented GK from distributing the settlement funds to Victim C, and that the reason the settlement funds had not been distributed to Victim C was because they were being misappropriated.

14. It was further part of the scheme that, on or about May 19, 2020, GIRARDI, with the knowledge of KAMON, LIRA, and GK Lawyer A, sent a letter to Victim D, in which GIRARDI stated, "I think you are going to love me in 30 days," falsely implying and promising that GK and GIRARDI would distribute the balance of Victim D's settlement funds within 30 days and further concealing that those funds were being misappropriated.

15. It was further part of the scheme that, on or about June 19, 2020, GIRARDI sent letters to Victims A through D falsely stating:

> There are some serious issues. I have been back east four times
> to get everything resolved. I think I need two more weeks. I
> will insist that, at least, we get the interest in two weeks, if I
> cannot resolve it.

KAMON and GK Lawyer A subsequently received a copy of the letter sent to Victim D. As each of GIRARDI, KAMON, and GK Lawyer A knew, there were no "serious issues" preventing GK from distributing the settlement funds to Victims A through D, GIRARDI had not been back east four times to get any such purported

9

issues resolved, and the reason the settlement funds had not been distributed to the Client Victims was because those funds were being misappropriated.

16.     It was further part of the scheme that the defendants fraudulently concealed from Law Firm A and the Court that GIRARDI sent the letters to Victims A through D containing the false statements described above.

17.     It was further part of the scheme that, on or about December 4, 2020, GIRARDI left a voicemail message for a lawyer at Law Firm A, in which GIRARDI falsely stated, "I think we got clearance to send money out today."

*Partial Lulling Payments to Victims A through D*

18.     It was further part of the scheme that, in response to repeated inquiries by Victims A through D about, and demands for, their settlement funds, and to hinder or delay Victims A through D from discovering and reporting the misappropriation of those funds, the defendants made partial payments and caused partial payments to be made to Victims A through D, as follows:

        a.      on or about May 11, 2020, wire transfers from GK's IOLTA account to Victim A of approximately $855,000; to Victim B of approximately $1,010,000; to Victim C of approximately $862,500; and to Victim D of approximately $1,030,000;

        b.      on or about July 6, 2020, wire transfers from GK's IOLTA account of $50,000 to each of Victims A through D; and

        c.      on or about September 3, 2020, wire transfers from GK's IOLTA account to Victim A of approximately $305,000; to Victim B of approximately

$460,000; to Victim C of approximately $312,500; and to Victim D of approximately $460,000.

19.     As a result of the scheme, the defendants caused the Client Victims to suffer losses of over $3 million.

20.     It was further part of the scheme that GIRARDI, KAMON, and LIRA concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

21.     On or about March 2, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GK Lawyer A, using the email address "[GKLawyerA]@girardikeese.com," received by, among others, a lawyer at Law Firm A and LIRA, using the email address "dlira@girardikeese.com," which email attached a settlement release signed by Victim B;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.    On or about April 6, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transfer of $40,000, purportedly as an "advance" to Victim B, from GK's IOLTA trust account to Victim B's bank account in Indonesia;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.      On or about April 22, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA, using the email address "dlira@girardikeese.com," to Victims A through D, falsely stating that their settlement payments were delayed because of the pandemic, including that "[w]e are still under the government mandate to stay at home";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.    On or about May 12, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA, using the email address "dlira@girardikeese.com," received by, among others, lawyers from Law Firm A, which email concealed and omitted material facts, including that: (1) all settlement funds for Victims A through D had been received in GK's IOLTA trust account; (2) GK had failed to distribute those funds to the Client Victims as required; and (3) GK was misappropriating settlement funds belonging to Victims A through D;

In violation of Title 18, United States Code, Sections 1343 and 2.

14

## COUNT FIVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.      On or about May 14, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

>       THOMAS V. GIRARDI,
>       CHRISTOPHER K. KAMON, and
>       DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GIRARDI's legal assistant to Client B in Indonesia, attaching a letter from GIRARDI containing the false statements: "We made an agreement with Boeing that all of the cases would be resolved. They gave us special authorization to distribute 50%";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.      On or about May 14, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GIRARDI's legal assistant to Client C in Indonesia, attaching a letter from GIRARDI containing the false statement: "I got enough of the problem taken care of so we were able to release 50% of the settlement";

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.    On or about May 15, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA using the email address "dlira@girardikeese.com," received by, among others, lawyers from Law Firm A, which email concealed and omitted material facts, including that: (1) all settlement funds for Victims A through D had been received in GK's IOLTA trust account; (2) GK had failed to distribute those funds to the Client Victims as required; (3) GK was misappropriating settlement funds belonging to Victims A through D; and (4) GIRARDI had sent letters to Victims B and C on or about May 14, 2020, which letters included false explanations for why those victims had not been sent their settlement funds;

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT EIGHT

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 20 of Count One are incorporated here.

2.      On or about May 19, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from GK Lawyer A, using the email address "[GKLawyerA]@girardikeese.com," received by, among others, a lawyer at Law Firm A and LIRA, using the email address "dlira@girardikeese.com," which email attached a settlement release signed by Victim E;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.    Beginning on or about March 4, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated February 24, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim A as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

19

## COUNT TEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.      Beginning on or about March 11, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated March 4, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim B as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT ELEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.     Beginning on or about March 27, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated March 9, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim C as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

## COUNT TWELVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      The allegations in paragraphs 1 and 3 through 20 of Count One are incorporated here.

2.      Beginning on or about March 30, 2020, and continuing until at least December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

> THOMAS V. GIRARDI,
> CHRISTOPHER K. KAMON, and
> DAVID R. LIRA,

defendants herein, did willfully and knowingly disobey and resist a lawful order of a Court of the United States, namely, the order dated March 4, 2020, issued by the Honorable Thomas M. Durkin, District Court Judge of the United States District Court for the Northern District of Illinois, by failing to distribute the settlement funds to Victim D as required by that order.

In violation of Title 18, United States Code, Sections 401(3) and 2.

22

## **FORFEITURE ALLEGATION**

The SPECIAL OCTOBER 2022 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendants GIRARDI, KAMON, and LIRA shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The property to be forfeited includes but is not limited to: a personal money judgment in the amount of approximately $3,069,500.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____
Signed by Jason Yonan on behalf of the
UNITED STATES ATTORNEY